# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Shirley Blevins, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 6:10-cv-03261-JMC |
| v. ) | |
| ) | **ORDER AND OPINION** |
| The Pension Plan for the Roanoke Plant ) | |
| Hourly Employees of ITT Industries ) | |
| Night Vision, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant The Pension Plan for the Roanoke Hourly Employees of ITT Industries Night Vision's ("Defendant" or "Defendant Pension Plan") Motion to Dismiss or Transfer Due to Improper Venue [Doc. 8] under 28 U.S.C. §§ 1404(a) or 1406(a). Defendant specifically contends in its Motion that venue is improper because there are only three places the governing law allows for venue in the instant action, and this Court meets none of the specified criteria. Defendant therefore requests dismissal or, in the alternative, transfer to the venue which it considers more appropriate – the United States District Court for the Western District of Virginia, Roanoke Division. For the reasons set forth below, Defendant's request to dismiss is denied, but the Court grants Defendant's alternative request to transfer.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff Shirley Blevins ("Blevins") is a citizen and resident of Roanoke, Virginia. Prior to Blevins's alleged disability, she worked at ITT Industries Night Vision, which is based in Virginia. She currently receives medical treatment from a physician in Virginia. Defendant

Pension Plan is administered by ITT Industries Night Vision, which "delegated the day-to-day administrative functions to a Retirement Board" located in Roanoke, Virginia. [Doc. 11, at 4].

After suffering her alleged disability, Blevins filed an administrative claim to receive disability pension benefits from Defendant, which denied her claim. Neither party disputes that Blevins exhausted her administrative remedies prior to filing suit in this Court. Blevins commenced this action on December 23, 2010, seeking to receive disability benefits from Defendant allegedly due to her pursuant to 29 U.S.C. § 1132(a)(1)(B). [Doc. 1]. Defendant moved to dismiss Blevins's action due to lack of venue pursuant to 28 U.S.C. § 1406(a); in the alternative, Defendant requested a transfer to the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). [Doc. 8].

## LAW AND ANALYSIS

### A. Appropriateness of venue in the District of South Carolina

Defendant is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and is subject to suit as a legal entity under 29 U.S.C. § 1132(d). ERISA's jurisdiction and venue provision states, "Where an action under this subchapter is brought in a district court of the United States, it may be brought (1) in the district where the plan is administered, (2) where the breach took place, or (3) where a defendant resides or may be found…." 29 U.S.C. § 1132(e)(2). Therefore, venue is appropriately found in the District of South Carolina only if the criteria of the statute are met.

### 1. The District Where the Plan is Administered

"An ERISA plan is administered where the plan is managed." *Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, No. Civ.NO. 05-1814, 2005 WL 2396777, at *2 (E.D. Pa. Sept. 27, 2005). Defendant asserts that the Pension Plan is not administered in South

Carolina. [Doc. 8, at 2; Doc. 11, at 4]. Defendant specifically provides that the Plan's primary purpose is to administer pension benefits and handle claims, both of which are done in Roanoke, Virginia. [Doc. 11, at 4- 5]. Defendant does at times determine disability claims as well; when those decisions are appealed, they are assigned to a third-party administrator, Metropolitan Life Insurance Company ("MetLife"). MetLife handles appeals in either New York or Kentucky, but not in South Carolina. [Doc. 10, at 3]. Additionally, while there is some dispute over where the fund that pays the claims is managed, neither party claims that the fund is managed in South Carolina. Therefore, the District of South Carolina is not the district where the Plan is administered or managed, and venue is not proper under this criterion.

**2. The District Where the Breach Took Place**

Venue may also be proper in the district where the breach took place. For purposes of ERISA's jurisdiction and venue provision, a breach may take place in one of two locations. The vast majority of courts has found that a breach occurs in the location "where the beneficiary was supposed to receive his benefits, i.e., his residence." *Roshinsky v. Reynolds*, No. 06-CV-6340 CJS, 2008 WL 2827528, at *3 (W.D.N.Y. July 21, 2008) (citing *Coulter v. Office & Prof'l Emps. Int'l Union*, No. 1:03-CV-111, 2003 WL 21938910, at *3 (E.D. Tenn. Apr. 10, 2003) (collecting numerous cases)); *Canada v. Am. Airlines, Inc. Pilot Ret. Benefit Program*, No. 3:09-0127, 2009 WL 2176983, at *3 (M.D. Tenn. July 21, 2009). A minority of courts has held that the breach may occur at the location where the decision to deny benefit payments was made. *See, e.g.*, *Turner v. CF&I Steel Corp.*, 510 F. Supp. 537, 541 (E.D. Pa. 1981) ("[T]he decisions regarding payment amounts were made in Colorado, and the checks were sent from New York. The breach, if any, occurred in one of those locations.").

Here, the District of South Carolina is an improper venue applying either of the approaches. Blevins lives and would receive benefits in Virginia, not in South Carolina. The original decision to deny benefit payments to Blevins was made in Roanoke, Virginia. The appeal to that decision was handled by MetLife in Kentucky. [Doc. 10, at 3]. As Blevins does not dispute that the breach, however it is defined, did not occur in South Carolina, venue in the District of South Carolina is improper under this standard.

### 3. The District Where a Defendant Resides or May Be Found

A third and final location where venue is appropriate is where a defendant resides or may be found. The United States Court of Appeals for the Fourth Circuit has not addressed the meaning of "may be found," but other courts have held that to be "found" in a district for purposes of ERISA's venue provision, the defendant must have "the sort of 'minimum contacts' with that district that would support the exercise of personal jurisdiction under the rule of *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945)." *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 810-11 (7th Cir. 2002); *see also, e.g.*, *Varsic v. U.S. D. for the C.D. of Cal.*, 607 F.2d 245, 248-49 (9th Cir. 1979); *I.A.M. Nat'l Pension Fund, Benefit Plan A v. Wakefield Indus., Inc., Div. of Capehart Corp.*, 699 F.2d 1254, 1257 (D.C. Cir. 1983); *McFarland v. Yegen*, 699 F. Supp. 10, 14 (D.N.H. 1988); *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan*, 517 F. Supp. 627, 632-34 (S.D. W. Va. 1981). This "minimum contacts" rule ensures that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' The defendant's conduct must make it reasonable that the defendant would anticipate being haled into court here." *McFarland*, 699 F. Supp. at 14 (quoting *Int'l Shoe*, 326 U.S. at 316; citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 29 (1980)).

The leading case in interpreting the phrase "may be found" and 29 U.S.C. § 1132(e)(2) generally is *Varsic v. U.S. D. for the C.D. of Cal.*, 607 F.2d 245 (9th Cir. 1979). The *Varsic* court outlined two ways that *International Shoe*'s "minimum contacts" requirement can be met when a defendant is a nonresident of the chosen venue. The first method of satisfying the "minimum contacts" rule is when "the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic[.]'" *Varsic*, 607 F.2d at 249 (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)). This establishes "minimum contacts" because "there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities." *Id.*; *see also McFarland*, 699 F. Supp. at 14 (minimum contacts requirements can be met "if a defendant 'purposefully directs' its activities toward the forum district, even without a physical presence.") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

This first method of satisfying the "minimum contacts" rule is not met here. Defendant does not have, nor does Blevins allege Defendant has, "substantial" or "continuous and systematic" contacts with the state of South Carolina. Blevins attempts to connect Defendant to South Carolina by arguing that Defendant is a subsidiary company of ITT Corporation, which likely does have various contacts with the state. However, ITT *Corporation* is not a party to this action. Defendant is an independent company that "exists solely to provide benefits to workers at a Roanoke facility, regularly pays benefits to residents of Roanoke and the Western District of Virginia, and is administered [in Roanoke, Virginia]." [Doc. 8, at 5]. Defendant accordingly does not have "minimum contacts" with South Carolina according to *Varsic*'s first method.

The second method outlined in *Varsic* regarding satisfying the "minimum contacts" rule occurs when the defendant's activities in the proposed venue District are not "substantial" or

"continuous and systematic." *Varsic*, 607 F.2d at 249 (quoting *Data Disc, Inc.*, 557 F.2d at 1287). In those cases, "the issue … turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *Id.*; *see also McFarland*, 699 F. Supp. at 14 ("Where the defendant's activities connected to the forum are not 'continuous and systematic,' the litigation must result from alleged injuries that arise out of or relate to those activities.") (citing *Burger King Corp.*, 471 U.S. at 472).

This second method of establishing "minimum contacts" is also not met in this case. Defendant has no alleged contacts or activities purposefully directed towards South Carolina, and Blevins's injuries do not arise from any activities conducted by Defendant in South Carolina. Blevins's alleged injury is Defendant's decision to not pay her disability pension benefits. That decision was made in either Roanoke, Virginia, by Defendant, or in New York or Kentucky by MetLife. Either way, the location in question is indisputably not in South Carolina. Defendant could not anticipate being "haled into court here" under these circumstances because Defendant does not have any of the "minimum contacts" which would lead it to anticipate suit in South Carolina. It is therefore not "found" in South Carolina for the purposes of ERISA's jurisdiction and venue provision.

Blevins argues that this Court has previously interpreted the circumstances under which a defendant has "minimum contacts" and may be "found" in the District for the purposes of ERISA's jurisdiction and venue provision in *Abercrombie v. Cont'l Cas. Co.*, 295 F. Supp. 2d 604 (D.S.C. 2003). Blevins contends that *Abercrombie* stands for the proposition that this Court must consider whether the funder and sponsor (the "parent company") of the employee pension plan has the requisite "minimum contacts" with South Carolina, instead of more properly focusing only on Defendant Pension Plan's contacts with the state. The named defendant in

*Abercrombie* was Continenal Casualty Co. ("Continental"). Continental was the insurer and de facto "parent company" of the relevant employee benefit plan in that case, so Blevins's statement is accurate with respect to that particular case. Here, unlike the defendant in *Abercrombie*, the parent company of Defendant Pension Plan is ITT Corporation, who is *not* a named defendant. *Abercrombie* properly analyzed the contacts the defendant in that case (the parent company Continental) had with the state of South Carolina. However, *Abercrombie*'s analysis should not be extended to the instant facts because the parent company of Defendant Pension Plan, ITT Corporation, is not a named party in this action.

Blevins fails to cite any additional authority analyzing the contacts of a parent company or any other non-party to determine whether the named defendant (usually, the employee benefit plan) may be "found" in the forum state. Therefore, Blevins's argument urging the Court to focus on ITT *Corporation's* contacts in the state of South Carolina is misguided.

Furthermore, the *Abercrombie* court specifically noted that defendant Continental did not move to transfer venue to a second appropriate court if venue in the District of South Carolina *was* found to be proper; instead, Continental only requested dismissal for *improper* venue. *Abercrombie*, 295 F. Supp. 2d at 607 n.2. Because venue was found to be proper in *Abercrombie*, there was no reason for the Court to analyze whether or not the action should be transferred to a more appropriate location, and in fact, the Court was restricted from doing so. Here, Defendant Pension Plan requested *either* dismissal *or* transfer, whether venue was found to be proper in the District of South Carolina or not, thereby giving the Court some discretion in how to resolve the matter. Accordingly, the *Abercrombie* case is inapposite to the instant facts, and the District of South Carolina is an improper venue for this action to be brought.

### B. Blevins's Request for Limited Discovery

Blevins has informally requested limited jurisdictional discovery into whether or not ITT Corporation and Defendant Pension Plan have the requisite minimum contacts in South Carolina in the event that the Court determines that venue is improper. This request was not put in the form of a motion and is therefore denied; however, this request would be inappropriate anyway because ITT Corporation's contacts are irrelevant. Additionally, Blevins has not stated any evidentiary basis for her assertion that "some" participants of Defendant Pension Plan live in South Carolina or that Defendant has other unspecified "ties" to the state. Further, whether or not "some" plan participants live in South Carolina is irrelevant. *See Waeltz*, 301 F.3d at 810-11 (no "minimum contacts" where the Plan's only contact with the district was that 2 out of 2,740 of the Plan's participants resided there); *Toy*, 2005 WL 2396777, at *4-5 (no "minimum contacts" where 48 out of 130 contributing employers, as well as a number of employees, were located in the district). The Court finds instructive the holding in *Seitz v. Bd. of Trs.*, 953 F. Supp. 100, 102-03 (S.D.N.Y. 1997):

> The Court finds that the fact that there are or were contributing employers and retirees receiving benefits in this district, other than the Plaintiffs, is not sufficient to satisfy the minimum contacts test nor the three prong test set by the *Varsic* Court. … The employers … or the retirees who [are unrelated to the current suit and who] received benefits in the Southern District are not at issue here.

Therefore, Blevins's informal discovery request is not reasonably calculated to lead to the discovery of facts that would establish venue, and it is consequently denied.

### C. Dismissal under 28 U.S.C. § 1406(a)

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Neither side makes any argument that Blevins's complaint does not state a legitimate cause of action otherwise

8

appropriate in a different venue; instead, Defendant moved to dismiss due to an objection to Blevins's choice of filing in the District of South Carolina.

"Generally, the interest of justice requires transferring [cases filed in an improper venue] to the appropriate judicial district rather than dismissing them." *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 153 (D.D.C. 2008) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)); *see also Pikas v. Williams Cos.*, 542 F. Supp. 2d 782, 789 (S.D. Ohio 2008) ("[Improper venue] in [and] of itself does not militate a dismissal of [an] action….") (citing 28 U.S.C. § 1406(a)). Dismissals due only to improper venue may result in procedural delays and additional filing fees for the plaintiff if the action is subsequently refiled in the proper court; conversely, transferring the action to the proper venue instead of dismissing it minimizes those negative consequences. *Rodriguez v. PepsiCo Long Term Disability* Plan, 716 F. Supp. 2d 855, 862 (N.D. Cal. 2010). Accordingly, transferring a case better serves the interests of justice. *Id.*; *see also Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955) (Transfer to proper venue is more desirable than dismissal because "the purpose of [transfer] is to get away from time-consuming and justice-defeating technicalities and secure an adjudication of the rights of the parties by as direct and expeditious a route as possible."). Defendant's Motion to Dismiss is therefore denied since the case is more appropriately transferred to an alternative venue for disposition.

### D. Transfer under 28 U.S.C. §§ 1404(a) or 1406(a)

As a preliminary matter, a district court must "engage in an 'individualized case-by-case consideration of convenience and fairness[]'" when considering a motion to transfer. *Sw. Equip., Inc. v. Stoner & Co.*, C.A. No. 6:10-1765-HMH, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Avant v. Travelers*

*Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C. 1987) ("Generally, the test of whether an action should be transferred to another jurisdiction is one of balancing convenience."). While a district court has sole discretion in determining whether a case should be transferred to an alternative venue, "transfer of venue is inappropriate if the transfer merely shifts the burdens of litigation from one party to the other." *Sw. Equip., Inc.*, 2010 WL 4484012, at *2 (citing *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984); *DeLay & Daniels, Inc. v. Allen M. Campbell Co.*, 71 F.R.D. 368, 372 (D.S.C. 1976)). The movant-defendant has the burden of proof to show that a transfer of venue is appropriate. *Id.*; *Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 925 F. Supp. 411, 413 (D.S.C. 1996) (quoting *Gerber v. Canfield*, 315 F. Supp. 1175, 1177 (D.S.C. 1970)).

When a case is filed in an improper venue, 28 U.S.C. § 1406(a) allows for transfer to the proper venue rather than dismissal so as to better serve the "interest of justice." Alternatively, 28 U.S.C. § 1404(a) allows for transfer of cases that are originally filed in a proper venue but which have an additional appropriate venue that would also better serve the "interest of justice." Based on the Court's finding of improper venue in the current action, the transfer would be granted under § 1406(a). Alternatively, venue transfer under § 1404(a) would also be appropriate even if this Court had found this District to be a proper venue for the action.

Both sections require that the transfer be to "any district or division in which [the action] could have been brought." 28 U.S.C. § 1406(a); 28 U.S.C. § 1404(a). In this case, the action could have been appropriately brought under 29 U.S.C. § 1132(e)(2) in the United States District Court for the Western District of Virginia because it is the location 1) where the plan is administered, 2) where the breach took place, and 3) where Defendant may be "found."

Transfers "in the interest of justice" under § 1406(a) follow identical standards as transfers under § 1404(a). *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n.5 (4th Cir.

1993). There are four primary factors considered in evaluating motions to transfer under § 1404(a) or § 1406(a). These include: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties and (4) the interest of justice." *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994) (citing *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253 (E.D. Va. 1988) (hereinafter *Baylor Heating*)). The Court will consider each of these factors in turn.

1. **Blevins's Choice of Venue**

   In a recent decision, this Court held that

   Generally, a plaintiff's choice of forum will not be disturbed lightly; a defendant has a heavy burden when it moves to transfer a venue *properly selected* by the plaintiff. *This burden, however, is relaxed* when the plaintiff *does not reside in the forum state*, … or when the "plaintiff sues in a forum which has *no discernible connection with the controversy*."

*Sw. Equip., Inc.*, 2010 WL 4484012, at *2 (emphasis added) (citations omitted); *Dicken*, 862 F. Supp. at 92-93 (quoting *Mims v. Proctor & Gamble Distrib. Co.*, 257 F. Supp. 648, 657 (D.S.C. 1966)). This Court is not a venue properly selected by Blevins, Blevins does not reside in South Carolina, and South Carolina has no discernible connection with the controversy. These facts all support relaxing the requirements.

The level of deference paid to Blevins's forum choice is further eroded when considering the reasons Blevins selected this Court over the seemingly more appropriate forum in the United States District Court for the Western District of Virginia. Blevins stated that she was concerned about receiving a speedy and efficient disposition of her case in any other District in the Fourth Circuit, and that this Court specifically was appealing because it is the only District that uses specialized case management orders. [Doc. 10, at 10-11]. Blevins's concern is unfounded, especially in light of the fact that she has presented no evidence as to why she could not receive an expedited decision or request such a scheduling order in any other alternative venue.

Additionally, Blevins's choice of venue in this action is almost immaterial and virtually mandates transfer if she wants to maintain her action. Given that this action would be dismissed pursuant to 28 U.S.C. § 1406(a) if it is not transferred to Virginia, the interest of justice weighs heavily in favor of transferring this action.

Blevins attempts to analogize the instant facts with an unpublished order from this Court, *Bynum v. CIGNA Healthcare of N.C., Inc.*, C.A. No. 6:00-3009-13 (D.S.C. Jan. 9, 2001), *aff'd on other grounds*, 287 F.3d 305 (4th Cir. 2002). In *Bynum*, the plaintiff originally filed her action in the District of South Carolina. The defendant, CIGNA Healthcare, sought to transfer the action because neither of the parties lived in South Carolina and none of the relevant events between the two parties occurred in South Carolina. The court held that venue in the District of South Carolina was appropriate under 29 U.S.C. § 1132(e)(2) because CIGNA insured over 4,500 South Carolina residents, and thus was "found" in the District of South Carolina. In considering transfer, the *Bynum* court gave the plaintiff's venue choice "little weight." *Id.* at 3. The Court did not give plaintiff's choice the considerable weight it is normally accorded because the District of South Carolina had "no connection with the matter in controversy." *Id.* Blevins argues that *Bynum* mandates her choice of forum be given "significant weight" despite the fact that neither party lives in South Carolina and none of the relevant events between the parties occurred in South Carolina. [Doc. 10, at 10]. This proposition is specifically rejected in *Bynum*. Additionally, unlike the *Bynum* defendant, Defendant Pension Plan here is not "found" in the District of South Carolina. *Bynum* is therefore inapposite to this action. Once again, to avoid dismissal, the action must be transferred.

## 2. Witness Convenience and Access

Blevins and Defendant both agree that this case should and likely will be disposed of based solely upon evaluation of the administrative record for abuse of discretion. This ordinarily would mean that the convenience of the witnesses would not help the Court in evaluating the transfer factors because no witnesses are required when the Court evaluates an administrative record. However, Defendant points out that Blevins "has argued: (1) that she is or may become entitled to a jury trial, (2) that she may take discovery, and (3) that evidence outside the administrative record may be admissible. (Plaintiff's Responses to Specialized Interrogatories, ¶¶ 4, 6, 8…). Witnesses for such discovery and trial are all located in the Roanoke, Virginia area." [Doc. 11, at 8]. Considering Blevins's arguments and assertions, there may be need for a trial, hearing, or oral argument that would require party and/or witness attendance. As all relevant witnesses and documents seem to be located in Roanoke, Virginia, this factor weighs in favor of transfer.

## 3. Convenience of the Parties

"'[T]his factor is chiefly operative in cases where the plaintiff chooses a forum away from (either party's) home.'" *Dicken*, 862 F. Supp. at 93 (quoting *Baylor Heating*, 702 F. Supp. at 1259). If the case is not disposed of solely based on the administrative record, having both parties travel from Virginia to South Carolina would impose a large inconvenience on both parties that could easily be avoided by transferring the case to Roanoke, Virginia. Transferring venue in this action would alleviate the burden on the parties if they desired or needed to attend any proceedings. For example, parties may need to be present at a mediation, and it would be much more convenient and time- and cost-efficient to conduct such mediation where the parties reside. If transferred, the burden of appearance would then shift to the attorneys given that

Defendant's attorney is located in North Carolina and Blevins's attorney is located in South Carolina. [Doc. 8, at 6; Doc. 10, at 11]. However, "[28 U.S.C. § 1404(a)] makes no provision and authorizes no consideration for convenience of counsel." *Wright v. Am. Flyers Airline Corp.*, 263 F. Supp. 865, 867 n.4 (D.S.C. 1967) (citations omitted); *accord In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004); *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3rd Cir. 1973). Blevins's counsel even points out that there will be little inconvenience or expense to the attorneys regardless of where the venue is located because all court filings will occur remotely via the Electronic Case Filing (ECF) system. Therefore, considering only the convenience of the parties, this factor weighs in favor of transferring this action.

**4. Interest of Justice**

"The 'interest of justice' category is designed broadly. It is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Baylor Heating*, 702 F. Supp. at 1260. Some of the relevant factors include the Court's familiarity with the applicable law and access to premises that might need to be viewed. *Id.* Since ERISA will apply regardless of whether this case is decided in South Carolina or Virginia, familiarity with the law is not an issue. Therefore, this factor is not significant in the Court's determination.

In light of the preceding factors, the Court finds that the interest of justice weighs towards transferring this action.

## CONCLUSION

For the foregoing reasons, the Court finds that venue is improper in the United States District Court for the District of South Carolina. The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss or Transfer Due to Improper Venue [Doc. 8]. Specifically,

the Court denies Defendant's request to dismiss the action, but the Court grants Defendant's request to transfer the action to the United States District Court for the Western District of Virginia, Roanoke Division.

**IT IS SO ORDERED.**

s/ J. Michelle Childs<br>United States District Judge

July 8, 2011
Greenville, South Carolina